City of Laporte *v.* The Gamewell Fire Alarm Telegraph Co.

---

CITY OF LAPORTE *v.* THE GAMEWELL FIRE ALARM TELEGRAPH COMPANY.

[No. 17,596. ´ Filed December 22, 1896.]

MUNICIPAL CORPORATIONS.—*Limitation of Indebtedness.*—A contract by a city for a fire alarm system, at a time when the city was indebted more than 2 per cent. on the assessed valuation of its taxable property, is void under the provisions of Art. 13 of the constitution limiting municipal indebtedness to 2 per cent. of the value of the taxable property, where such city had no money in the treasury to pay for such system either at the time the contract was made or when same was completed and accepted, although there were sufficient funds on hand to pay for it at the time fixed by contract for such payment.

SAME.—*Municipal Indebtedness.*—Where a municipal corporation contracts for a usual or necessary thing and agrees to pay for it annually or monthly, as furnished, the contract does not create an indebtedness for the aggregate sum of all the installments, as such indebtedness does not come into existence until it is earned.

SAME.—*Municipal Indebtedness.*—*Current Expenses.* —When the current revenues of a city are sufficient to pay the current expenses necessarily incurred to sustain corporate life, no indebtedness is incurred; but a debt for current expenses cannot be made beyond the constitutional limit.

SAME.—*Municipal Indebtedness.*—*Payable Out of a Particular Fund.* —Municipal obligations payable out of a particular fund, and for which the fund only and not the municipality is liable, are not within the inhibition of Art. 13 of the constitution limiting municipal indebtedness to 2 per cent. of the value of the taxable property.

City of Laporte *v.* The Gamewell Fire Alarm Telegraph Co.

STATUTORY CONSTRUCTION.—*Clause Taken From Statute of Other State.*—Where a clause is taken from the constitution or statute of another state it will be deemed to have the meaning given it by the courts of that state.

From the LaPorte Circuit Court. *Reversed.*

*W. B. Biddle* and *J. H. Bradley*, for appellant.

*Andrew Anderson*, for appellee.

MONKS, J.—This action was brought by appellee, against appellant, to recover the contract price of a fire alarm system furnished by appellee.

The court, at the request of the parties, made a special finding of facts and stated as a conclusion of law thereon, that appellee was entitled to recover the contract price. To this conclusion of law appellant excepted. The assignment of errors calls in question the conclusion of law.

It appears, from the special finding, that on August 5, 1890, appellee entered into a contract with appellant to furnish and put in complete working order appellee's system of fire alarm, for the sum of $3,500.00, to be paid May 1, 1891. The contract provided that when said system was completed appellant should accept the same and deliver to appellee a certificate to that effect. The work was completed and accepted by appellant December 18, 1890. At the time of entering into the contract, and until May 1, 1891, appellant was indebted, not including appellee's claim, over $5,000.00, more than two per cent. on the assessed value of its taxable property. At the date of said contract $2,639.90 was on hand in the city treasury. When the work was completed and accepted there was on hand in the general fund $359.00. On May 1, 1891, there were $10,328.80 in the city treasury belonging to the general fund collected from the duplicate of 1890. On June 30, 1890, the common council of appellant, by

resolution duly passed, ordered that a tax of $1.05 on each hundred dollars of valuation of taxable property be levied, 74 cents for general purposes and 31 cents for the purpose of paying $5,000.00 of the city debt and the interest on the city debt. That the amount of said levy was $31,285.00. No specific levy was ever made for the purpose of meeting any indebtedness to appellee.

On June 22, 1891, the common council passed a resolution, declaring "that $3,532.68 be set aside out of the general fund for the purpose of paying the order drawn in favor of the Gamewell Fire Alarm Telegraph Company, which was ordered drawn May 25, 1891, by the common council, and which the mayor refused to sign."

Appellant earnestly insists that by the contract sued upon appellant become indebted to appellee, and that the same was void under the provisions of Art. 13, of the constitution, for the reason that appellant was already indebted in excess of the amount allowed by said article.

Article 13, of the constitution, adopted in 1881, is as follows: "No political or municipal corporation in this State shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporation, shall be void: *Provided,* That in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and in value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection

and defense to such an amount as may be requested in such petition."

This clause in our constitution is in legal effect, the same as that of Iowa, and was no doubt taken from the constitution of that state. It is a familiar rule that where a clause is taken from the constitution or statute of another state it will be deemed to have the meaning given it by the courts of that state. Under this provision every indebtedness incurred "in any manner or. for any purpose" is within the prohibition. *Council Bluffs* v. *Stewart*, 51 Ia. 385, 1 N. W. 628; *Scott* v. *City of Davenport*, 34 Ia. 208; *Grant* v. *City of Davenport*, 36 Ia. 396, 401; *French* v. *City of Burlington*, 42 Ia. 614; *Anderson* v. *Orient Fire Ins. Co.*, 88 Ia. 579, 55 N.W. 348; *Brown* v. *City of Corry*, 175 Pa. St. 528, 34 Atl. 854; *Lake County* v. *Rollins*, 130 U. S. 662, 9 Sup. Ct. 651; *Doon Tp.* v. *Cummins*, 142 U. S. 366, 12 Sup. Ct. 220; *Litchfield* v. *Ballou*, 114 U. S. 190, 5 Sup. Ct. 820; note to *Beard* v. *Hopkinsville*, 23 L. R. A. 402-408; note to same case, 44 Am. St. 229-243.

The controlling question in this case is, do the facts found show an indebtedness of appellant within the inhibition imposed by the foregoing article of the constitution?

A debt in its general sense is a specific sum of money which is due or owing from one person to another, and denotes not only an obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. *State* v. *Hawes*, 112 Ind. 323; *City of Valparaiso* v. *Gardner*, 97 Ind. 1; *Crowder* v. *Town of Sullivan*, 128 Ind. 486.

It is the rule in this State that when a municipal corporation contracts for a usual and necessary thing, such as water or light, and agrees to pay for it an-

nually or monthly, as furnished, the contract does not create an indebtedness for the aggregate sum of all the installments, since the debt for each year or month does not come into existence until it is earned. The earning of each year's, or month's compensation is essential to the existence of a debt. *Crowder* v. *Town of Sullivan, supra,* and authorities cited; *City of Valparaiso* v. *Gardner, supra,* and cases cited; *Foland* v. *Town of Frankton,* 142 Ind. 546, and authorities cited; *Seward* v. *Town of Liberty,* 142 Ind. 551, 554; 1 Dillon on Munic. Corp. (4th ed.), section 136a; *Wade* v. *Oakmont Borough,* 165 Pa. St. 479; *Brown* v. *City of Corry, supra.*

If the city can pay this indebtedness when it comes into existence without exceeding the constitutional limit there is no indebtedness, and therefore no violation of the constitution. But if the indebtedness of the city already equals or exceeds the constitutional limit, and the current revenues are not sufficient to pay such indebtedness when it comes into existence, including other expenses for which the city is liable, an indebtedness is thereby created and there is a violation of the constitution. *City of Valparaiso* v. *Gardner, supra;* Dillon on Munic. Corp., section 136, 136a; *Appeal of the City of Erie,* 91 Pa. St. 399.

It is also the law that items of expense essential to the maintenance of corporate existence, such as light, water, labor and the like constitute current expenses payable out of current revenues. *Foland* v. *Town of Frankton, supra,* p. 550. When the current revenues are sufficient to fully pay the current expenses necessarily incurred to sustain corporate life, no indebtedness is incurred. But a debt cannot be made beyond the constitutional limit, even for the current expenses mentioned, no matter how urgent. *Sackett* v. *City of*

*New Albany*, 88 Ind. 473; *City of Valparaiso* v. *Gardner*, *supra*.

It is clear, therefore, that whenever a city whose indebtedness exceeds the constitutional limit, does not have the money on hand arising from current revenues to meet its debts of whatever character as they come into existence, whether for light, water, labor or any other expense, the city has become indebted and the constitution is violated.

It is not sufficient, however, merely to have on hand enough money to pay each indebtedness as it comes into existence, but the same must be paid as it comes into existence, or there must be enough money on hand to pay all of such indebtedness outstanding, or there will be an indebtedness created and the constitution be thereby violated.

If to avoid the constitutional inhibition it is only necessary to have on hand sufficient money to pay an indebtedness when it comes into existence, without paying or keeping on hand enough money to pay it, there would be no restraint upon the power of a municipality to become indebted.

Obligations payable out of a particular fund, and for which the fund only and not the municipality is liable, are not within the inhibition. *Quill* v. *Indianapolis* 124 Ind. 292; *Strieb* v. *Cox, Treas.*, 111 Ind. 299; *Board, etc.*, v. *Hill*, 115 Ind. 316; *City of New Albany* v. *McCulloch*, 127 Ind. 500, 505; *Hitchcock* v. *Galveston*, 96 U. S. 341; *Galveston* v. *Heard*, 54 Tex. 420; *Davis* v. *City of DesMoines*, 71 Ia. 500; *Baker* v. *Seattle*, 2 Wash. 576, 27 Pac. 462; *Austin* v. *Seattle*, 2 Wash. 667, 27 Pac. 557.

The same rule applies to agreements to accept certificates of assessments in full satisfaction. *Davis* v. *City of DesMoines, supra*. But anything that renders

the city liable brings the indebtedness within the restriction. *Fowler* v. *City of Superior*, 85 Wis. 411.

It is held in some states, under constitutional provisions substantially the same as ours, that a municipality which has reached its limit may anticipate the collection of the revenue appropriated to its use by drawing warrants against taxes levied but not collected, thus substantially appropriating and assigning the amount drawn to the holder of the warrant. *French* v. *City of Burlington, supra; Law* v. *People*, 87 Ill. 385; *City of Springfield* v. *Edwards*, 84 Ill. 626; *City of East St. Louis* v. *Flannigan*, 26 Ill. App. 449; *Koppikus* v. *State Capitol Commissioners*, 16 Cal. 248.

But in order to escape the inhibition of the constitution the tax must not only have been levied, but the warrant must be drawn payable out of the particular fund, and be such in legal effect as to discharge the municipality from all liability. *City of Springfield* v. *Edwards, supra; Law* v. *People, supra; Fuller* v. *City of Chicago*, 89 Ill. 282; *People* v. *May*, 9 Col. 404, 12 Pac. 838.

In *City of Valparaiso* v. *Gardner, supra*, p. 13, this court said: "If a bond, note, or other obligation is executed, then, doubtless, a debt is created, for such things constitute evidences of indebtedness. * * * So, if the consideration of the contract is received at once, instead of being yielded in the future or at intervals, then it might be said that there was a debt; but where there is nothing owing until after the thing contracted for is done or furnished, and that thing is a part of the necessary yearly expenses of the municipality, there will be no debt, if, when the thing is done or furnished there will be money in the treasury, yielded by current revenues, sufficient to fully pay the claim without encroaching upon other funds."

Conceding without deciding that a fire alarm sys-

tem is a necessary or ordinary annual expense of a municipality and essential to its existence, yet appellee's claim is within the inhibition of the constitution. In this case it is not material whether the indebtedness came into existence on December 18, 1890, when appellee completed the work and the same was accepted by appellant, or at the date of the contract, August 5, 1890. It is clear that the indebtedness came into existence December 18, when the work was completed and accepted, if not before. There was not sufficient cash in the city treasury to pay said indebtedness at that time, and the constitutional provision was violated. But it is urged that the debt was not payable until May 1, 1891, and that there was sufficient cash in the treasury to pay the same at that time. The rule is that the cash must be in the treasury to pay the same when the debt comes into existence, not when it becomes due. *City of Valparaiso* v. *Gardner, supra.* Otherwise the city could issue bonds for borrowed money or other existing indebtedness, or become so indebted in other ways far in excess of the constitutional limit, and by making the same payable in annual installments, and each year levying and collecting sufficient taxes to pay the same, avoid the constitutional inhibition.

It is claimed by appellee that under the law, as declared in *Brashear* v. *City of Madison*, 142 Ind. 685, appellant is liable, and the conclusion of law therefore correct. The case cited was brought to enjoin the city of Madison from entering into a contract with the appellee in the case for the erection and location of a fire alarm system in said city, for which the city was to pay when completed $5,000.00; upon the ground that the city was indebted in excess of the constitutional limit. In that case this court held that it was shown by the allegations of the complaint that it was

not proposed to create an indebtedness, but simply to make a cash purchase. In overruling the petition for a rehearing this court said: "The theory of the original opinion is, that to sustain the suit, the appellants were required to show that the maximum debt'limit, as prescribed by the constitution, had been reached, and that the city was about to create an additional debt, and that they had failed to show this. This failure, it was held, was due to the fact that it was not proposed to create a debt, but simply to make a cash purchase, the city having in its treasury the funds with which to pay therefor."

Counsel for appellee cites *Powell* v. *City of Madison*, 107 Ind. 106. That was a suit to enjoin the officers of that city from issuing bonds to a certain amount, or any part of them, or in any manner borrowing money or creating a debt under and by virtue of an ordinance to fund the indebtedness of the city, set out in the complaint, upon the ground that the city was already indebted in excess of the constitutional limit. The city of Madison answered, admitting the indebtedness as stated in the complaint, but averred that the city did not intend to make use of, or to appropriate any of such bonds or any of the proceeds for which they might be sold, for the purpose of paying or extinguishing any part of the indebtedness of the city contracted since March 14, 1881, when section 13 of the constitution took effect; but solely and only to exchange such bonds for, or use their proceeds in payment of bonds of such city outstanding for debts incurred before that date. This answer was held to be sufficient by this court upon the ground that the new bonds, as provided for in the ordinance, would represent the debt that the bonds issued prior to March 14, 1881, represented, and that thus no new debt would be created. If such new bonds were exchanged for the old ones,

one would only be a substitute for the other and be an extinguishment thereof, and the aggregate outstanding indebtedness would not be increased. Neither if the new bonds were sold for cash and the old bonds paid therewith would the indebtedness be increased. The presumption is that public officers will perform their duties honestly, and upon this presumption the injunction in that cause was refused. But if the proceeds of the sale of the new bonds were misapplied by the officers and the old bonds not paid, the indebtedness would be increased.

It was not held in *Powell* v. *City of Madison, supra,* that the new bonds would be valid under such circumstances. It was held by the Supreme Court of the United States, in *Doon Tp.* v. *Cummins, supra,* under the provisions of the constitution of Iowa, that when the bonds had been sold to pay off other bonds which were equal to the constitutional limit, and the money received for the new bonds was misapplied and the old bonds not paid, that the new bonds were invalid and not collectible.

To the same effect is *Anderson* v. *The Orient Fire Ins. Co., supra.* This question, however, is not involved in this case, and it is not necessary to determine whether or not the same rule prevails in this State.

It is the duty of persons dealing with public officers to take notice of their official and fiduciary character, and that they can only bind the public corporation they represent in the manner and to the extent authorized by law. *Bloomington School Tp.* v. *The National School Furnishing Co.,* 107 Ind. 43, and cases cited; *Julian* v. *State,* 122 Ind. 68; *Honey Creek School Tp.* v. *Barnes,* 119 Ind. 213; *Union School Tp.* v. *First Nat. Bank,* 102 Ind. 464.

Appellee was required to take notice of the fact that appellant was indebted beyond the constitutional

limit, and that the city therefore had no power to become indebted.

Appellant had no power, under the facts stated in the special finding, to become indebted to appellee, and the common council had no power to ratify or validate the same by resolution or otherwise. *Doon Tp.* v. *Cummins, supra; Marsh* v. *Fulton County,* 10 Wall. (U. S.) 676; *Loan Assn.* v. *Topeka,* 20 Wall. (U. S.) 655; *Daviess County* v. *Dickinson,* 117 U. S. 657, 6 Sup. Ct. 897; *Norton* v. *Shelby County,* 118 U. S. 425, 6 Sup. Ct. 1121; *Kane* v. *Independent Dist.,* 82 Ia. 5, 47 N. W. 1076; *Kelley* v. *Milan,* 127 U. S. 139, 8 Sup. Ct. 1101.

The resolution of the common council, adopted June 22, 1891, was therefore ineffective and gave no validity to appellee's claim.

It follows that the court erred in its conclusions of law.

Judgment reversed, with instructions to the court below to restate its conclusions of law and render judgment in accordance with this opinion.