## GRANT v. THE CITY OF DAVENPORT *et al.*

1. **Municipal corporation**: LIMITATION OF INDEBTEDNESS: ORDINARY EXPENSES. Where a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limits of its current revenues and such special taxes as it may legally, and in good faith intends to, levy therefor, such contract does not constitute "the incurring of indebtedness" within the meaning of the constitutional provision (art. 2, § 2) limiting the power of municipal corporations to contract debts.

2. —— A contract entered into by the city with a company for the supply of water to the city for a term of years by such company, who was to receive a certain annual rate therefor, is one relating to the ordinary expenses of the city, and the rate agreed to be paid is not an indebtedness prohibited by the constitution.

3. —— SPECIAL CHARTERS. Chapter 78, Laws of 1872, empowering cities to construct water-works, or to procure individuals to construct them and maintain them, applies as well to cities acting under special charters as to those under the general incorporation law.

4. —— TAXATION: CONSTITUTIONAL LAW. The provision of said chapter to the effect that the tax provided for therein to pay the water rents shall not be levied on property lying beyond the limits of the benefits or protection of such water-works, is not unconstitutional.

5. —— EXEMPTION FROM TAXATION. An ordinance of the city providing that in consideration of the premises, the supply of water, etc., the franchise of the water company and all property actually required for the management of its works, shall be exempt from taxation, is not invalid.

6. —— Such provision in effect applies the taxes as they become due in part payment of or consideration for the water rent, and hence is not objectionable as an exemption from taxation.

7. —— EXCLUSIVE PRIVILEGES. The validity of an ordinance giving to a company the exclusive privilege for a term of years of laying water-pipes in the streets, etc., can be contested only by some other company or individual afterward claiming such right.

*Appeal from Scott District Court.*

MONDAY, APRIL 28.

THIS is an action brought by James Grant and others, citizens and tax payers of the city of Davenport, against the said

city and others, to restrain the said city from carrying into effect a certain ordinance passed by the city December 4, 1872, on the ground that the said ordinance is unconstitutional, because it creates a larger debt than the constitution allows, and violates the obligation of the contract made at the time its compromise bonds were issued, and exempts the property of said water company from municipal taxation, and gives to said company privileges and immunities which cannot be enjoyed by other citizens, and gives to said company the monopoly of supplying the citizens of Davenport with water.

The sections of said ordinance particularly complained of, are the 1st, 11th, and 12th, which are as follows:

SECTION 1. *Be it enacted by the City Council of the City of Davenport, Iowa :* That there is hereby granted to Michael Donahue, and his associates, who shall organize as a corporation under the laws of the State of Iowa, under the name of the Davenport Water Company, its successors and assigns, the exclusive privilege for twenty-five (25) years, and an equal privilege thereafter with all others, of supplying the citizens of said city with water, to be taken from the Mississippi river at such a point above the old railroad bridge as will best secure an abundant supply, both for domestic use and fire protection ; said water to be taken out of the river at such distance from the shore as will secure pure water for domestic use.

SEC. 11. *Be it further enacted :* That during the first term of five (5) years of this charter, for each fire hydrant located as hereinbefore provided, and of which said city shall at all times have the free and unobstructed use for fire purposes, the city shall pay to said company an annual rental of eighty dollars ($80) ; for each of said hydrants for the next term of five years, an annual rental of seventy dollars ($70) ; for each of said hydrants for the term of five years next thereafter, an annual rental of fifty dollars ($50) ; and thereafter, during the existence of this charter, an annual rental of forty dollars ($40) ; for each of said hydrants — payments to be made semi-annually ;

the rent for said hydrants to commence as soon as said 200 hydrants are ready for use.

SEC. 12. *Be it further enacted :* That said company shall, during the life of this grant, furnish water free of charge to all public schools, and to all buildings in said city owned and used by the city, except public baths, and for fountains in each of the public parks therein, and at not less than three places in said city, for public watering troughs, to be located by the city. But for all water used for other purposes (except for fire and domestic use), the said city shall pay the same rates as for domestic use, and said rates, whether for domestic or otherwise, shall be established at a uniform price for 1000 gallons as near as practicable. And in consideration of the foregoing provisions, the said company during the term of twenty-five (25) years shall be exempt from all municipal taxation on the franchise hereby granted, and all property owned by said company and actually required for the economical management of the works aforesaid.

The valuation of said city for taxation for State and county purposes is less than $4,000,000. The debt of said city is $350,000, the most of it for compromise bonds, issued since the adoption of the constitution, a part of which are held by James Grant, one of the plaintiffs.

The petition also alleges that the city is incorporated under a special act of the legislature, and acts of a general nature have no authority or control over it. That all the taxes it can levy are necessary to pay its running expenses and the interest on its debt. That to pay for the hydrants in section 11 of said ordinance mentioned, a special tax will have to be levied; that the city has no authority to levy such special tax ; that said tax, when levied, will be a cloud on the land of plaintiffs and other real estate owners in said city.

The water company have accepted the terms and obligations of said ordinance, and are proceeding to execute their part of the contract, and will call on said city for pay for the rent of said hydrants, and are relying on the money to be

paid to them by said city as the inducement to perform their part of said contract, created by said ordinance.

To this petition the defendants demurred for the following reasons: 1st. That said petition does not state facts sufficient to constitute a cause of action. 2d. That plaintiffs do not appear by said petition to be entitled to bring this suit. 3d. That it does not appear by said petition that the execution of the ordinance therein referred to will increase the indebtedness of said city.

The court sustained the demurrer; to which ruling the plaintiffs excepted and now appeal.

*C. Whittaker* for the appellants: 1. Said plaintiffs are residents and tax payers in said city, on both real and personal property, and as such can bring this suit. Dillon, §§ 732, 733, 734, 737, and cases cited in notes thereto; *Mayor, etc., of Baltimore* v. *Gill et al.*, 31 Md. 375; *Rice* v. *Smith et al.*, 9 Iowa, 570; *Stokes* v. *Scott County*, 10 id. 166; *Macklot* v. *The City of Davenport*, 17 id. 379; *Litchfield* v. *Polk County*, 18 id. 70; *B. & M. R. R. Co.* v. *Mount Pleasant*, 12 id. 112; *Olmstead* v. *Henry County*, 24 id. 33.

2. The tax levied to pay for the use of the hydrants will be a cloud on the land of petitioners. Equity will not allow a title, otherwise clear, to be clouded by a claim which cannot be enforced, either in law or in equity. *Hollans* v. *Baltimore*, 11 Md. 186; *Coster* v. *The Tide Water Co.*, 3 C. E. Greene (18 N. J.), 71; *Pettitt* v. *Shepherd*, 5 Paige, 493; *Oakley* v. *Trustees*, 6 id. 262; *Mohawk & Henderson R. R. Co.* v. *Arthur*, 6 id. 83.

3. Does the ordinance impose a debt on the city? By section 11 thereof, the city agrees to pay for 240 hydrants, at $80 each for the first five years; at $70 each for the next five years; at $60 each for the next five years; at $50 each for the next five years; at $40 each for the remainder of the time of the charter, the rent to commence as soon as 200 hydrants are ready for use.

A debt is created when one person binds himself to pay

Grant v. The City of Davenport.

money to another.   A party becomes indebted when he enters
into an obligation to pay.   A debtor is one who owes a debt,
he who may be constrained to pay what he owes.   *Scott* v. *City
of Davenport* (not yet reported).

Does the aforesaid ordinance bind the city of Davenport to
pay money to the Davenport Water Co. ?   If so, the ordinance
creates a debt.   Can the city, under the terms of the ordinance,
be compelled to pay for the use of the hydrants which it
agrees to take and pay for in section 11 thereof ?   If so, the
ordinance creates a debt.

The possibility that the water company will never perform
their part of the contract, that the hydrants may never be ready
for use, that the city may never be called on for pay, cannot
avail in this argument.   The demurrer admits that the water
company will perform their part of the contract; that the
hydrants will be ready for use, and that the city will be called
on for pay for them.

Does the fact that no bond or other evidence of debt is to
be issued make any difference ?   We say not.   The constitu-
tion does not say that a municipal corporation shall not become
indebted by bond, or note, or bill, or any other evidence of
debt, but that the corporation shall not become indebted in
any manner or for any purpose.

*J. N. Rogers* and *Bills & Block* for the appellees.   That
such a transaction by an individual does not, as matter of law,
create a debt, was expressly decided in *Wood* v. *Partridge*, 11
Mass. 487. . . See, also, *Dively* v. *The City of Cedar Falls*, 27
Iowa, 227; *Wentworth* v. *Whitmore*, 1 Mass. 471; *Fitchburg
Cotton Manufacturing Co.* v. *Melvin*, 15 id. 269.

That the plaintiffs show no right in themselves to maintain
this suit as parties plaintiff.   *Haywood* v. *City of Buffalo*, 14
N. Y. 534, 537–542; *Doolittle* v. *Supervisors of Broome
County*, 18 id. 155, 157–163; *Roosevelt* v. *Draper*, 23 id. 318,
323–327, 330; *Susquehanna Bank* v. *Supervisors of Broome
County*, 25 id. 312, 314; *Phelps* v. *City of Watertown*, 61
Barb. 121.

Grant v. The City of Davenport.

COLE, J. — I. Our constitution declares that "no municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate, exeeding five per centum on the value of the taxable property within such corporation — to be ascertained by the last State and county tax lists, previous to the incurring of such indebtedness. Const., art. 11, § 3. The plaintiffs aver in their petition the amount of the taxable property and also the amount of the city indebtedness upon bonds executed in compromise of a previous bonded debt, and show, by express averments, that the present indebtedness of the city is in excess of the constitutional limit. The direct question is therefore presented, whether the ordinance and its acceptance, which together constitute a contract, create an indebtedness by the city, in the sense of that word as used in the constitution. And we are not, by any means, inclined to limit or restrain the meaning of the word "indebtedness," as there used, so as to confine it to debts evidenced by bond or to those which are due simply, but rather to give to the word its fair and legitimate meaning and general acceptation.

We have heretofore recognized and adjudicated the right and duty of a city to retain and apply its current revenues to the payment of its proper and ordinary current expenses; and this too, as against a judgment creditor, who demanded and insisted upon the application of such revenues to the payment of his judgment debt, then long over due. *Coy* v. *The City of Lyons*, 17 Iowa, 1; *Coffin* v. *The City of Davenport*, 26 id. 315. This right to thus apply the current revenues to the defraying of ordinary expenses is grounded upon the fact that such a course is absolutely necessary to the life of the municipality and to the successful accomplishment of the purposes of its creation. Any appropriation of these revenues, therefore, whether by ordinance or by contract, to the payment of the ordinary expenses, would be, beyond question it seems to us, both reasonable and proper. And if the appropriation was made in advance of the receipt of the revenues, the action would be just as legit-

*Marginal note:* 1. MUNICIPAL CORPORATION: limitation of indebtedness: ordinary expenses.

mate; because, that the revenues will be received is a legal certainty. And, again, if the appropriation was made in advance, to pay for services to be rendered or articles to be furnished, within the scope of proper and ordinary expenses, the payment to be made upon the rendition of the services or the delivery of the articles, no question could arise as to the propriety or legality of such a course, regardless of the fact whether the city was then indebted to its maximum limit or not. And this, because the right of the city to thus apply its revenues, notwithstanding its indebtedness, is a part of the well-settled and expressly adjucated law of the State. If, therefore, the ordinance in question accomplishes this and no more, its validity is settled.

The city of Davenport, by its original charter, is clothed with the power " to provide the city with water and to erect hydrants and pumps in the streets for the convenience of the inhabitants." By chapter 78 of General Laws 1872, all cities are empowered to construct and operate water-works, or to authorize individuals or a corporation to construct and operate them on such terms as may be agreed upon. The application of this act to the city, defendant herein, is controverted by the appellants, and will be considered hereafter. But, that a supply of pure water to the inhabitants of a city for their health and domestic use, as well as for the purpose of extinguishing fires, is the duty of a city, and that the cost thereof properly comes within the term "ordinary expenses," is not questioned by appellant's counsel; nor, indeed, could it be by any one.

The city of Davenport would surely become indebted further, by employing individuals or a corporation to construct its water-works for it, in consideration of a certain sum, to be paid in bonds or other evidences of indebtedness. *Scott v. The City of Davenport*, 34 Iowa, 208. And the necessity for the water-works would constitute no justification or excuse for the violation of the constitution, or of a statute, But, if it can induce individuals or a corporation to construct and maintain such works for the use and benefit of the municipality and its inhabitants, and can pay a just and fair rent, as

agreed, out of its current revenues, and can also, out of such revenues, pay its other ordinary expenses, we can see no sufficient reason for holding that an agreement to pay such rent either weekly, monthly, quarterly or annually, creates an indebtedness against the city. If it did create an indebtedness, then an ordinance providing for the payment of the salaries to the officers of the city would also create an indebtedness and would be invalid, where the maximum of indebtedness has already been reached. And such a construction would also render invalid every contract for the delivery of lumber to repair a bridge or a sidewalk, or for the hauling of gravel to repair a street, or for the employment of a laborer to work thereon.

And, to carry the illustrations further, it is very manifest that a city, already indebted to its maximum limit, could not purchase, upon credit, real property with buildings thereon, suitable for its offices, council room, etc.; nor could it, having the real estate, make valid contracts upon its credit for the erection of such buildings; nor employ laborers to put up such buildings, and issue daily, weekly or otherwise, its warrants for such labor, where its cost is manifestly above the amount it can pay out of its ordinary current revenue, and at the same time defray its other necessary and current expenses. But it may rent such real estate and buildings for a like use, and agree to pay, at fixed periods, a reasonable rent, not exceeding, with the other expenses, its ordinary current revenue; and such a contract for payment of rent would not be creating an indebtedness, for it is in effect a cash transaction, where the payments are made *pari passu* with the accumulation of the rent; and the length of time the contract is to continue, whether it be for thirty days or thirty years, does not alter its effect.

Suppose a man having a family to support and is without other means to do it, except his salary, which is adequate for that purpose. He is compelled to rent a house to live in, and by a contract for a term of years he can reduce its cost, and he therefore makes a lease for ten years at $300 per year, or

$3,000 for the term, the rent being payable monthly, quarterly or annually. Has that man created an indebtedness of $3,000 ? Does any fair or legitimate meaning of the word " indebtedness " or indebted, or does any general acceptation of its meaning require us to affirm that he is indebted ? We think not. Or, if instead of renting a house, he should contract for the board of his family for a like term, at $1,000 per year, does he thereby become indebted in the sum of $10,000 ? It seems to us not.

From these illustrations, as well as from the plain and practical meaning of the language of the constitutional inhibition, the true rule and just interpretation is evolved, to wit : that where the contract made by the municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally, and in good faith intend to levy therefor, such contract does not constitute " the incurring of indebtedness " within the meaning of the constitutional provisions. *Dively* v. *The Town of Cedar Falls*, 27 Iowa, 227.

II. By an act of the legislature, chapter 78 of General Laws, 1872, p. 80, " all cities, incorporated towns and villages," were

3. —— special charter. authorized to construct water-works, or procure individuals to construct and maintain them on such terms as might be agreed upon, and to levy such a tax on the taxable property, etc., not exceeding five mills on the dollar, as should be sufficient to pay the expenses, etc. It is claimed by appellant's counsel that this law does not apply to the city of Davenport, and that it is not affected thereby. It was held, substantially, in *Clark, Dodge & Co.* v. *The City of Davenport*, 14 Iowa, 494, that a general statute or provision (Rev., § 3275) did not apply to the city of Davenport, which was incorporated under a special charter. It was not there held or intimated, that the legislature might not have made that provision applicable to cities under special charters, if it had chosen or intended so to do. Here, the legislature has, by direct and express enactment, made the act apply to and affect all cities. It was competent for the legislature so to enact, and

having done so, in language too clear to admit of doubt or evasion, it is the law. There is no question made, but that the ordinance in controversy is fully authorized by that act, if it applies to the city of Davenport. We hold that it does.

III. The act aforesaid also provides that " it shall be the duty of such city, town or village, entering into such contract, to levy each year and cause to be collected a special tax as provided for above, sufficient to pay off such water-rents so agreed to be paid to said individuals or company constructing said works. *Provided, however*, that said tax shall not exceed the sum of five mills on the dollar for any one year; nor shall the same be levied upon the taxable property of said city which lies wholly without the limits of the benefit or protection of such works, which limit shall be fixed by the city council each year before making such levy."

4. —— taxation; constitutional law.

The last clause of the above quotation is assailed by appellant's counsel as unconstitutional. We have too often held that the constitution itself imposed the same limitation, when the legislature omitted to annex it, to now require us to enter into a further discussion to show that it is constitutional when incorporated into a legislative enactment. *Morford* v. *Unger*, 8 Iowa, 82; *Langworthy* v. *Dubuque*, 13 id. 86; *Fulton* v. *Davenport*, 17 id. 404; *Buell* v. *Ball*, 20 id. 282; *Davis* v. *Dubuque*, id. 458; *O'Hare* v. *Dubuque*, 22 id. 144; *Deeds* v. *Sanborn*, 26 id. 419. See, also, *Warren* v. *Henly*, 31 id. 31.

IV. The last clause of section 12 of the ordinance provides: " And in consideration of the foregoing provisions the said company, during the term of twenty-five years, shall be exempt from all municipal taxation on the franchise hereby granted, and all property owned by said company and actually required for the economical management of the works aforesaid."

5. —— exemption from taxation.

This portion of the ordinance, it is claimed, is violative of article 8, section 2 of the constitution, which declares that the property of corporations shall be liable to taxation the same as the property of individuals. If we placed the same con-

struction upon the ordinance as the counsel for appellants seems to, we should probably concur with him in his legal positions and conclusions thereon. But it seems to us that when the whole ordinance is construed together, it does not amount to an exemption from taxation. It, in effect, applies the taxes as they would otherwise become due, in part payment of, or in part consideration for, the water rent. The city pays the amount of money specified and the taxes upon the franchise and the property required for the management of the works, as water rent. It might have required the payment of the taxes, and then returned the amount as part pay for water rent. The *manner* of doing it cannot defeat the power to do it.

V. It is further objected that the ordinance grants to the water company privileges and immunities, which, on the same

7. —— exclusive privilege.

terms, cannot be enjoyed by all citizens. The ordinance and its acceptance by the water company constitute a contract. It can hardly be good law to hold this contract invalid, because the city cannot make the same contract with every other citizen or company. Such a multiplicity of contracts might give the city too much water. The legislature expressly authorized, by the act aforesaid, the making of such a contract; and herein this case differs from *The City of Chicago* v. *Rumpf*, 45 Ill. 90.

If any other person or company shall hereafter claim the right to lay down water pipes in the streets, he or it may then contest the validity of the exclusive privilege so to do, granted by the ordinance to this water company. Until such a controversy arises it is neither necessary or proper for us to decide it.

We have conceded the right of these plaintiffs to maintain this action, if a right of action existed, without discussing or deciding the question of parties. Upon a full examination of the case we find, as did the learned district judge, that no right of action exists, and, therefore, order that the judgment of the district court be

Affirmed.